# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1922V

| | |
|---|---|
| BARBARA HICKEY,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br><br>Filed: March 28, 2025 |

*Jessica Wallace*, Siri & Glimstad LLP, Aventura, FL, for Petitioner.

*Tyler King*, U.S. Department of Justice, Washington, DC, for Respondent.

### **RULING ON ENTITLEMENT**[1]

On December 21, 2020, Barbara Hickey filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine she received on September 19, 2019, she suffered a shoulder injury related to vaccine administration ("SIRVA") a Vaccine Table injury. Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner is entitled to compensation for her SIRVA.

I. **Relevant Procedural History**

This claim was initiated on December 21, 2020, and relevant medical records were filed thereafter. ECF No. 5, 8. The parties attempted settlement, but determined by August 2022 that they could not amicably resolve the claim. ECF No. 21.

On October 31, 2022, Respondent filed his Rule 4 Report stating that Petitioner did not present evidence that Petitioner's left shoulder symptoms began withing the 48-hour time frame to establish a SIRVA claim, and therefore the claim warranted dismissal. ECF No. 23. The parties thereafter briefed the matter, and on March 31, 2023, Petitioner filed her Motion for Ruling on the Record. ECF No. 28. Respondent opposed the motion on June 1, 2023. ECF No. 31. Petitioner filed her reply on June 9, 2023 (ECF No. 32), and this matter is ripe for entitlement.

II. **Evidence**

   A.   *Medical Records*

- On September 19, 2019, Petitioner received a flu vaccine in her left shoulder at the Rite Aid Pharmacy at 475 Seaview Ave, Staten Island, NY. Ex. 4, Ex. 10 at 4. A photo of Petitioner's shoulder has been included in the record, showing a small bruise at site of injection. Ex. 5.

- Petitioner had a "New Patient" appointment with Dr. Rina Mehta nearly five months later, on February 18, 2020. There was no mention of shoulder pain at this visit or notes of pain during physical exam. Ex. 8 at 5 – 12.

- The next day (February 19, 2020), Petitioner saw Dr. Bradford Parson at Mount Sinai for left shoulder pain. Ex. 6 at 5. Dr. Parson notes that Petitioner reported experiencing pain since "she got a flu shot in September," and that she was having "night disturbance and activity related symptoms." *Id.* There was no "obvious swelling or ecchymosis", no obvious weakness or lag, joint is nontender and "no obvious arthritis. *Id.* An X-ray of Petitioner's left shoulder was performed at this visit. Ex. 7 at 57.

- On April 16, 2020, Petitioner had appointment with Dr. Mehta for clearance to return to work after a possible COVID infection. Ex. 8 at 20 – 28.

2

- Petitioner had a total of six physical therapy sessions at Mount Sinai Rehabilitation Center between March 10 – 16, 2020 and then resuming June 23 and 25, 2020. Ex. 7. Petitioner experienced a brief pause in visits due to the COVID – 19 Pandemic.

### B. *Witness Statements*

Ms. Hickey's affidavit contends that although she did not initially find the vaccination to be more painful than past ones she had received, her arm began hurting on her walk home from the pharmacy, and that by that night it was painful enough to interfere with her sleep. Ex. 1 at 2. She describes spending the next few months at her job constantly in pain and requiring assistance performing some of the tasks inherent to her job as a nurse, including hanging IV bags, grabbing supplies from above-head cabinets, and transferring patients from bed to bed. *Id.* at 3.

Ms. Hickey has also provided some background explanation for her treatment course. She was at the time a resident of Texas employed as a nurse, and in 2019 was on a travel nurse assignment, first at Mount Sinai Brooklyn hospital in Brooklyn, New York, and later at Mount Sinai Manhattan. Ex. 1 at 1. As part of her work contract, no sick days were permitted, and for any days missed she would not receive pay (while still being obligated to reimburse the medical staffing company $250.00 for her paid housing). *Id.* at 2. Ms. Hickey thus sought to work through the pain because she was the sole provider for her family and she could not afford to take time off and not be paid while also needing to reimburse the medical staffing company. *Id.*

Ms. Hickey further explains that she tried to make an appointment with an orthopedist for her shoulder, but was unable to find any provider who would accept her insurance and that she would have to wait until her contract with Mount Sinai Manhattan expired so she could apply for a permanent position with Mount Sinai and receive better health insurance. Ex. 1 at 4. In the meantime, she self-treated her shoulder symptoms with Advil, Tylenol, and Aleve, along with ice and heat. *Id.* Once Ms. Hickey's travel contract ended on December 28, 2019, she a began full-time position at Mount Sinai Manhattan on January 6, 2020. *Id.* at 5. As soon as her new health insurance began, she immediately sought an orthopedist. *Id.* Thus, Ms. Hickey argues that due to her unique employment circumstances, she was unable to obtain the necessary treatment any earlier than she did.

Ms. Crawford also submitted the affidavits of her husband and friend who all recall Ms. Hickey's complain of left shoulder pain in the days and weeks following her September 19, 2019 vaccination. Exs. 11, 12. Mr. Good affirmed that Petitioner was

3

required to obtain the flu vaccine and provide proof of vaccination to her employer. Ex. 11 at 2. He received that vaccine before Petitioner, who thereafter "began complaining that the flu shot she had hurt more than any other shot she ever received," and he observed the band-aid for the administration point was placed high on the shoulder. *Id* at 3. Mr. Good affirmed that Petitioner was thereafter in pain after the injection, with no relief from over-the-counter medications and movement of the arm. In addition, no doctor's offices accepted her out of state insurance, so she was required to wait until her new insurance was active and continue to work, as her employer paid for their home. *Id.* Mr. Good states that Petitioner received several steroid injections and had physical therapy. *Id.* at 4.

Ms. Deborah Holloway, a coworker of Ms. Hickey's at Mount Sinai Manhattan, spoke on her condition at work, noticing that after receiving her flu vaccination, Ms. Hickey would work slower in the operating room than she typically would and that during this work she was "beet red", "sweaty and flushed", and "looked as if she was about to pass out." Ex. 12 at 2. When Ms. Holloway talked to Ms. Hickey about what she observed, she indicates that Ms. Hickey told her that she had been feeling this way since she received her flu shot the week prior. *Id.*

### III.    Parties' Respective Arguments

Petitioner argues that her medical records and affidavit support her claim that her shoulder pain began withing the 48 hours of receiving the vaccination and all elements of a Table SIRVA are present here.  ECF No. 28 at 8. Respondent argues that a Table claim is no present here as causation – in – fact cannot be proven. ECF No. 31 at 8.

### IV.    Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v.*

*Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V.     Analysis

### I.     Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

6

>   (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

#### 1. Petitioner has no Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). In this case, the medical records do not indicate that Petitioner suffered any prior left shoulder pain issues and Respondent does not contend that Petitioner has failed to carry her burden with respect to this requirement. Accordingly, the record allows me to find that Petitioner had no prior left shoulder condition or injury.

#### 2. Pain Occurs with the Specified Timeframe (Onset)

A SIRVA claimant must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain occurred within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent contends that Ms. Hickey did not report her shoulder injury to a medical provider until nearly five months after vaccination, despite working as a nurse at a medical center. Resp. at 6. This fact is not disputed – and it is not an insignificant amount of time, thus reasonably casting doubt on Petitioner's onset contentions. However, there are a variety of reasons that an individual may wait before seeking medical treatment - especially for a shoulder injury related to a vaccine injury. Many individuals expect, and are advised, that there will be pain at the injection site after vaccination. This can lead to

a delay in seeking treatment. An individual's particular threshold for pain, or avoidance of doctors, are other reasons.

In addition, Ms. Hickey has established that she was in a unique situation due to the nature of her employment. Both Ms. Hickey and her husband explained that due to her employment contract as a travel nurse, she was not afforded any paid time off, and that each missed day of work would result not only in receiving no pay for that day, but a penalty of $250.00 as reimbursement for her housing, which was being paid for by the employment contract. It is not unreasonable that Ms. Hickey found this situation simply too punitive for her current financial situation, and chose instead to work through the pain.

Additionally, the record establishes that once Ms. Hickey obtained the appropriate health insurance, she did not delay in seeing care for her shoulder from an orthopedist, and that when she reported her symptoms at that visit she indicated that she had been suffering from left shoulder pain "since she got the flu shot in September." Ex. 6 at 6. Petitioner's first PT record from March 10, 2020, also demonstrates that Petitioner attributed her left shoulder pain to the vaccination she received in September 2019. Ex. 7 at 16. Onset in these later records is further corroborated by the affidavits of Petitioner, her husband, and her coworker. The fact that several of these treatment-related records were generated within four to six months of vaccination is also relevant to this inquiry; this is not a case where a petitioner relies on records long after the immediate timeframe to prove onset.

Although a nearly five-month delay in seeking treatment for shoulder pain and symptoms does not absolutely negate a SIRVA claim, it does provide evidence on the issue of severity. Indeed, I note that despite her symptoms, it does not appear that Ms. Hickey missed a single day of work due to her condition. This is therefore a case when an *extremely modest* compensation award will be appropriate (and Petitioner should immediately disabuse herself of the notion that any other outcome is likely). Nevertheless, I find that the totality of the evidence preponderantly supports the conclusion that Ms. Hickey's shoulder pain occurred within 48 hours of her vaccination, as alleged.

### 3. Petitioner's Pain and Limited Range of Motion was Limited to her Left Shoulder

The specific language of a SIRVA injury contained in the QAI of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). It does not appear that Respondent is contesting this criterion and there is nothing in the submitted record to indicate that Petitioner's symptoms were not limited to her left

shoulder. Petitioner has consistently complained of left shoulder pain and loss of ROM, she received a steroid injection in her left shoulder, and all of her PT was targeted specifically at rehabilitating her left shoulder. Accordingly, Petitioner has satisfied the third QAI requirement.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is no evidence in the record to suggest that another condition or abnormality could be the cause of Petitioner's left shoulder injury and Respondent does not offer any argument to the contrary. Accordingly, Petitioner has satisfied the fourth QAI requirement.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Ms. Hickey received a flu vaccine intramuscularly in her left shoulder on September 19, 2019. Ex. 10 at 4; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion was limited to her left shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id*. Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

Starting from September 21, 2019 (48 hours after vaccination), the records undoubtedly demonstrate that Ms. Hickey suffered the residual effects of her shoulder injury for more than six months. *See*, *e.g.*, Ex. 7 at 8 (record of Petitioner's PT session on June 23, 2020, during which she exhibited reduced ROM). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## II.     Damages

Petitioner has requested that, should this court find her entitled to compensation, that she be awarded of $100,000.00 for all compensation available under 42 U.S.C. §300aa-15. Mot. at 10. Respondent has not addressed any quantum of damages in his Response. However, Petitioner has not provided any justification for her proposed award amount. Therefore, following the issuance of this decision, the case will enter the damages phase so that the parties can attempt to reach an informal resolution on the issue of an appropriate amount of damages.

Given that the parties engaged in settlement discussions prior to reaching an impasse and the filing of the instant motion, the parties should have a general idea of their respective positions. I also note that, as discussed *supra*, although Petitioner's delay in seeking treatment for her SIRVA was not enough to extinguish her claim, it does suggest to me (especially since this case did not result in surgery) that only an extremely modest pain and suffering award is appropriate. Petitioner's current demand is therefore egregiously excessive in light of the facts of this case, and she must therefore recalibrate her expectations.

## VI.     Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. The issuance of a damages order will follow the filing of this decision.**


**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
