# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1922V**

| | |
|---|---|
| BARBARA HICKEY,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 20, 2026 |

*Rachel L. Brown, Siri & Glimstad LLP, Kansas City, MO, for Petitioner.*

*Tyler King, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On December 21, 2020, Barbara Hickey filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving an influenza ("flu") vaccine on September 19, 2019. Petition at 1 The matter was assigned to the "Special Processing Unit" (the "SPU"), and following briefing from the parties, on March 28, 2025, I ruled that Petitioner was entitled to compensation for her injury. (ECF No. 36). The

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Ms. Hickey filed an Amended Petition on July 8, 2022, providing additional detail and medical record citations. ECF No. 22.

parties were unable to informally resolve the issue of damages, however, and following further briefing from the parties, the matter is now ripe.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$47,000.00, for her past pain and suffering.**

## I. Legal Standard – Pain & Suffering

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00" Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress

contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II. Prior SIRVA Compensation Within SPU[4]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2026, 5,790 SPU SIRVA cases have been resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,575), with the remaining 215 cases dismissed.

3,139 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation as warranted by the record.[5] In only 392 of these cases, however, was the amount of damages determined by a special master in a reasoned decision or ruling.[6] As I have previously stated, the written decisions setting

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 2,436 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,710 cases) or stipulation (37 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than

forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

| | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[8] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *392* | *2,710* | *37* | *2,436* |
| **Lowest** | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| **1st Quartile** | $64,811.00 | $57,596.44 | $82,181.20 | $30,000.00 |
| **Median** | **$85,973.93** | **$76,428.29** | **$109,582.59** | **$46,000.00** |
| **3rd Quartile** | $125,007.45 | $105,000.00 | $160,000.00 | $72,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 392 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $85,000.00 as the median amount. Only eleven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

---

instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## III. The Parties' Arguments

The only issue for resolution is the amount of compensation which should be awarded for Petitioner's pain and suffering. Petitioner seeks $65,000.00, while Respondent has not proposed a particular amount but argues that Petitioner's SIRVA was mild, meaning she should receive an award "consistent with previous mild cases" having awards ranging from $25,000.00 to $45,000.00. Response at 9-12.

Petitioner characterizes her injury as a moderate (and at times severe) SIRVA. Reply at 1, 4. She particularly emphasizes the pain levels she experienced, which could reach up to 10/10 after some workdays, as well as her unique circumstances with her

---

application of the statutory cap before any projected pain and suffering award is reduced to net present value).

employment as a travel nurse rendering her unable to seek treatment sooner than she did despite her efforts. Brief at 7.

Petitioner favorably compares the facts and circumstances in her case to those suffered by the petitioners in *Horton, Tully, Felton,* and *Rayborn*[11] - decisions featuring past pain and suffering awards ranging from $55,000 to $64,000.00. Brief at 8-11. The $65,000.00 she requests is reasonable compared to those cases because they all involved substantially similar amounts of overall treatment, although Petitioner emphasizes that her high pain levels due to having to work through the pain warrant a slightly higher amount than any cited case.

In contrast, Respondent argues that "[P]etitioner's overall injury was mild." Resp. at 5. Respondent emphasizes the approximately five-month delay in seeking treatment for her injury, and the relatively limited amount of treatment that Petitioner received (one steroid injection and four PT sessions). *Id.* Respondent does not argue for a specific dollar amount for pain and suffering in the instant cases, but requests an award consistent with awards in other mild SIRVA cases. *Id.* Respondent has also included a chart of 17 cases he considered to involve mild SIRVA injuries with pain and suffering awards ranging from $25,000.00 to $45,000.00. *Id.* at 9-11.

## IV. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

[11] *Horton v. Sec'y of Health & Hum. Servs.,* No. 20-1166VV, 2022 WL 1421847 (Fed. Cl. Spec. Mstr. Mar. 25, 2022) (awarding $60,000.00 for past pain and suffering); *Tully v. Sec'y of Health & Hum. Servs.,* No. 21-1998V, 2024 WL 4533515 (Fed. Cl. Spec. Mstr. Sept. 20, 2024) (awarding $62,500.00 for past pain and suffering); *Felton v. Sec'y of Health & Hum. Servs.,* No. 20-1969V, 2024 WL 5002927 (Fed. Cl. Spec. Mstr. Sept. 20, 2024) (awarding $64,000.00 for past pain and suffering); *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for past pain and suffering).

A thorough review of the medical records reveals that Ms. Hickey suffered a mild SIRVA injury, albeit one featuring higher peak pain levels than usual for that level of injury. Petitioner has explained that due to her employment as an out-of-state travel nurse, not only was she unable to find any orthopedist who would accept her insurance, but she was unable to miss work due to punitive financial measures in her employment contract – she did not receive any paid time off, and a missed day of work would result in no pay and a penalty representing a pro-rated amount of her housing stipend. Mot. at 2-3; Ex. 1 at 1-2.

The fact that Petitioner was able to continue working despite her shoulder injury is strongly indicative of a more mild injury that was able to be managed through more conservative measures such as heat, ice, and over-the-counter pain medication. Indeed, it does not appear that Petitioner missed a single day of work as a result of her injury. Nor does her injury appear to have had an adverse impact on her performance at work, as she was retained by Mount Sinai hospital permanently following the expiration of her travel nurse contract. While at PT, Petitioner rated her pain variously from 0/10 at rest, with that pain rising to up to 6/10 during and after work, and 10/10 "with overuse." Ex. 7 at 8. At another session, Petitioner rated her pain as 4/10 because the prior day at work she had to move a lot of hospital beds. *Id.* at 13. It is unclear from the record, however, how frequently Petitioner was required to overuse her arm and thus how frequently she felt pain at this extreme.

Further speaking to the mildness of the injury is Petitioner's overall treatment course. Once Petitioner was able to change her insurance and be seen by an orthopedist, her entire course consisted of one steroid injection and four sessions of PT over approximately four months, with Petitioner ceasing formal treatment after a June 25, 2020, PT appointment. *See generally* Ex. 7. This cuts against Petitioner's assertion that the duration of her injury was 15 months (which is based on Petitioner's assertion that by December 2020, she felt she was back to her baseline and fully recovered). Mot. at 6. Considering that Petitioner was originally assigned 12 PT sessions, I am not inclined to find that Petitioner's symptoms, at least those arising to a compensable level, persisted beyond the end of June 2020, when she ceased attending PT despite not being formally discharged. This would place the total duration of her injury at approximately nine months.

Given this framework, Petitioner's cited cases involve awards based on more severe injuries than the instant case. For example, the petitioner in *Horton* had an overall treatment course of eight months but sought treatment only 12 days after vaccination and had an overall more rigorous treatment course with 12 sessions of PT, three times as many as Ms. Hickey. *Horton v. Sec'y of Health & Hum. Servs.*, 2022 WL 1421847, at * 1. Similarly, in *Tully*, the petitioner's treatment course was equal to Ms. Hickey's at nine months, but Ms. Tully underwent 26 PT sessions, substantially more than Ms. Hickey. *Tully v. Sec'y of Health & Hum. Servs.*, 2024 WL 4533515, at *15.

Respondent, by contrast, has cited some good comparables that would have been even more persuasive *had Respondent proposed a specific amount of award*. But simply citing to a range of cases, and then requesting that I choose an award that is "consistent with previous mild cases for pain and suffering," does not provide adequate aid in resolving the parties' dispute. As has been articulated in many cases, awarding an amount of pain and suffering is an art and not a science, and it is thus incumbent upon the parties to express their views as to what *specific* award is proper. As no two cases are identical, it is to be expected that awards may deviate somewhat from the amounts that each party proposes, but I continue to look to the parties to provide case law to support their proposed award and to achieve a body of cases that are consistent, predictable, and fair.

The comparable cases at the lower end of Respondent's spectrum represent less severe cases than Ms. Hickey's, particularly regarding pain levels and length of treatment, while those on the higher end are more consistent with Petitioner's experience. However, and as noted above, this case uniquely featured higher peak pain levels than what is usually seen in mild SIRVA cases, even if it is not readily apparent from the record how often Petitioner did experience such severe pain. This ultimately leads me to find that a reasonable award would be slightly higher than Respondent's illustrated range. Thus, based on all of the circumstances and evidence submitted, I find that Petitioner's pain and suffering warrants an award of $47,000.00.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, I find that **$47,000.00** represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[12]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of <u>$47,000.00</u> to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.